# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE **DIVISION**
#### **CIVIL ACTION NO.** 1:15-CV-00102-GCM

| | |
|---|---|
| WINDY CITY INNOVATIONS, LLC, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| FACEBOOK, INC., ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant Facebook, Inc.'s Motion to Change Venue (Doc. No. 25) and Redacted Memorandum in Support (Do. No. 26), filed on August 25, 2015. Pursuant to a court order, Defendant filed an unredacted version of its Memorandum on September 2. (Doc. No. 28) Plaintiff filed its Memorandum in Opposition on September 11, 2015 (Doc. No. 29), and Defendant filed its Reply on November 21, 2015 (Doc. No. 30). The case was reassigned to the undersigned on March 7, 2016, along with a case asserting similar allegations against Microsoft Corp. (*Windy City Innovations, LLC v. Microsoft Corp.*, 1:15-cv-103-GCM (W.D.N.C. 2015)), and the parties' motions are ripe for disposition. For the following reasons, Defendant's Motion will be **GRANTED.**

## I. BACKGROUND

The Plaintiff in this matter, Windy City Innovations, Inc., is a Delaware limited liability company with a principal place of business in Chicago, Illinois. (Compl. ¶ 1, Doc. No. 1) Plaintiff has acquired the rights to four patents[1] issued by the United States Patent and

---

[1] The patent numbers are as follows: No. 8,407,356, entitled "Real Time Communications System"; No. 8,458,245, entitled "Real Time Communications System"; No. 8,473,552, entitled "Communications System"; and No. 8,694,657, entitled "Real Time Communications System."

Trademark Office between 2013 and 2014.  (Compl. ¶¶ 6-10, Doc. No. 1)  The named inventor on the patents is Daniel Marks, a professor of electrical and computer engineering at Duke University in Durham, North Carolina.  (Compl. ¶¶ 11-15, Doc. No. 1)  Although the Complaint does not describe him as an employee of Windy City, Plaintiff's Memorandum in Opposition represents that Marks is now also its Chief Technology Officer.  (Plaintiff's Memorandum in Opposition at 9, Doc. No. 29)

Defendant Facebook, Inc. is a Delaware corporation with a principal place of business in Menlo Park, California.  (Compl. ¶ 2, Doc. No. 1)  The employees who are responsible for developing the various portions of the Facebook website that Plaintiff alleges infringe its patents are located primarily in Menlo Park, California.  (Memorandum in Support at 8-10, Doc. No. 26; Jordan Decl., Doc. No. 26-1)  However, some relevant employees are located in other U.S. cities or abroad.  (Memorandum in Support at 2-5, Doc. No. 17)

On June 2, 2015, Plaintiff filed a complaint against Defendant in Asheville, North Carolina, alleging infringement of Plaintiff's four patents.  (Doc. No. 1)  The Complaint asserts that venue is proper in the Western District of North Carolina because "Facebook has regularly conducted business in this judicial district" and "has a regularly established place of business" in Forest City, North Carolina.  (Compl. ¶ 5, Doc. No. 1)  Facebook concedes that it maintains a data storage center in Forest City, North Carolina, but asserts that "no Facebook employee who works at the Forest City data center was involved in the design and development" of the disputed products, and that no documents that are relevant to this litigation are uniquely housed at that facility. (Memorandum in Support at 4, Doc. No. 26; Jordan Decl. ¶¶ 8-9, Doc. No. 26-1)

Defendant filed a Motion to Dismiss on July 24, 2015 (Doc. No. 20), followed by a Motion to Change Venue and Memorandum in Support on August 25 (Doc. No. 25, 26).

Plaintiff filed a Response in Opposition to the Motion to Dismiss on August 10 (Doc. No. 24), and a Memorandum in Opposition to the Motion to Change Venue on September 11 (Doc. No. 29). Defendant's Replies were filed on August 20 (Doc. No. 22) and September 21 (Doc. No. 30). Thus, both motions are ripe for disposition. Because the Court will grant Defendant's Motion to Transfer Venue, it will not address the Motion to Dismiss and will defer to the United States District Court for the Northern District of California on that issue.

## II. STANDARD OF REVIEW

United States Code Title 28 Section 1391(b) provides that a plaintiff may bring a civil action in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction." As the Supreme Court has explained, "[w]hen venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court*, 134 S. Ct. 568, 578 (2013).

Section 1404(a) of the same Title provides, in relevant part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Congress designed § 1404(a) as a "federal judicial housekeeping measure," *Van Dusen v. Barrack*, 376 U.S. 612, 636 (1964), that operates to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and

expense," *id.* at 616 (internal quotation marks and citation omitted).  In a motion brought pursuant to § 1404(a), the moving party bears the burden of establishing (1) that the plaintiff could have brought the case in the transferee district and (2) that transfer would make the litigation more convenient for the parties and for the witnesses, and would advance justice.  *See Datasouth Computer Corp. v. Three Dimensional Techs.*, Inc., 719 F. Supp. 446, 450 (W.D.N.C. 1989).  The district court retains "substantial discretion" to decide transfer motions by weighing the various relevant factors.  *Id.*

### III. ANALYSIS

It is undisputed that this case could have been brought in the Northern District of California.  Thus, the question for this Court is whether transfer would promote convenience and further the interests of justice.  The Western District of North Carolina has consistently applied an eleven-factor test in analyzing whether transfer would advance the interests of justice. Those factors are:

> (1) the Plaintiff's choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for the attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of any judgment obtained; (7) the relative advantages and obstacles to a fair trial; (8) other problems which might make the litigation more expeditious and economical; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies resolved at home . . . ; and (11) the avoidance of issues involving conflict of laws.

*Am. Motorists Ins. Co. v. CTS Corp.*, 356 F. Supp. 2d 583, 585 (2005).[2]

This Court ordinarily gives great weight to the Plaintiff's choice of forum.  *See, e.g.*, *BellSouth Telecommunications, Inc. v. N.C. Utilities Comm'n*, 3:05-cv-345, 2005 WL 2416204 (W.D.N.C. 2005).  However, as both parties acknowledge, the weight given to the plaintiff's

---

[2] The parties agree that the enforceability of judgment, the avoidance of conflicts of law issues, and the necessity of a view of Facebook's premises are not implicated in this case.  (Defendant's Memorandum in Support at 24, 28 Doc. No. 26; Plaintiff's Memorandum in Opposition at 6 n.7, Doc. No. 29)

"varies with the significance of the contacts between the venue chosen by plaintiff and the underlying contacts." *Sandvik Intellectual Prop. AB v. Kennametal Inc.*, No. CIV. 1:09CV163, 2010 WL 1924504, at *6 (W.D.N.C. May 12, 2010) (quoting *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 635 (E.D. Va. 2003)). For this reason, where there is "little connection between the claims and this judicial district," a plaintiff's choice of forum may be given little weight in favor of transfer to "a venue with more substantial contacts." *Id.* (quoting *Koh*, 250 F. Supp. 2d at 635). As a general matter, then, a motion to transfer from the plaintiff's chosen venue will often be granted where this district "is neither the plaintiff's residence, nor the place where the operative events occurred." *Husqvarna AB v. Toro Co.*, No. 3:14-CV-103-RJC-DCK, 2015 WL 3908403, at *2 (W.D.N.C. June 25, 2015).

In this instance, the Court will give Plaintiff's choice of forum little weight in its analysis. Plaintiff has failed to identify any meaningful connection between this ligation and the Western District of North Carolina. The allegedly infringing products were not invented here, nor has their development and maintenance centered here. Plaintiff has identified no relevant witnesses in this district, its patents were not acquired here, and Plaintiff does not reside here. To the extent Plaintiff attempts to base an association with this district on its relationship with inventor Daniel Marks, it establishes only a potential connection to the *Eastern* District of North Carolina. (Plaintiff's Memorandum in Opposition at 13, Doc. No. 29) Plaintiff's insistence that it plans to call an expert who resides in Virginia is even less availing. (Plaintiff's Memorandum in Opposition at 15, Doc. No. 29) Finally, Plaintiff suggests that the existence of a Facebook "data center" in this district "establishes a firm connection to this controversy." (Plaintiff's Memorandum in Opposition at 8-9, Doc. No. 29) The Court disagrees. Plaintiff alleges causes of action for patent infringement, and no Facebook employee who works at the data center can

5

shed any light on whether that conduct occurred.  (*See* Defendant's Memorandum in Support at 10, Doc. No. 26)  Thus, the existence of an unrelated Facebook facility does not establish a relationship between Plaintiff's claims and this district.

Plaintiff asserts that two other factors weigh against transfer.  First, it claims that other problems which might make the litigation more expeditious and economical "weigh heavily against transfer." (Plaintiff's Memorandum in Opposition at 16, Doc. No. 29)  This argument is based on the pendency of the parallel litigation against Microsoft in this district.  However, the Court finds that both cases similarly lack a discernible connection to this district, and thus that Plaintiff's attempt to rely on this factor is entitled to no weight.  Second, Plaintiff argues that "court congestion" weighs against transfer to the Northern District of California—which Facebook proposes and Microsoft would not object to.  (Plaintiff's Memorandum in Opposition at 21-22, Doc. No. 29)  Because the Northern District of California does appear to be slightly more congested than this district, this factor weighs against granting Defendant's Motion.

Nevertheless, "[d]ocket conditions, while a consideration, cannot be the primary reason for retaining a case in this district." *Cognitronics Imaging Sys., Inc. v. Recognition Research, Inc.*, 83 F.Supp.2d 689, 699 (E.D. Va. 2000); *accord. PlayVision Labs, Inc.*, No. 3:14-CV-312-GCM, 2014 WL 6472848, at *4.  And in this case, the balance of the other relevant factors favors transfer.  Specifically, the residence of the defendants in these related actions, the ease of access of proof, and the interest in making the litigation more expeditious and economical suggest that it would be significantly more efficient and convenient to conduct this litigation in the Northern District of California.

The alleged acts of infringement—the development of various aspects of Facebook's website and applications that Plaintiff complains about—all occurred in the Northern District of

California, and the relevant employees and documents are also located there. Plaintiff argues that deposition testimony is inevitable (Plaintiff's Memorandum in Opposition at 17, Doc. No. 29), and a transfer to the Western District of Washington or Northern District of California would simply shift the inconvenience of travel from Defendant to Plaintiff (*Id.* at 21). However, this Court agrees with Defendant that Plaintiff has broadly alleged that its patents, developed by Marks, are being infringed by a large number of Facebook products developed by numerous engineers. (Defendant's Memorandum in Support at 2-3, Doc. No. 26) Moreover, the only other witness that Plaintiff has identified is its Virginia-based expert. It is undeniably easier and more cost effective to transport two individuals to a major metropolis like Seattle or San Jose than it is to transport numerous Facebook and Microsoft employees from the West Coast to the mountains of North Carolina. Moreover, there is no indication that it would be at all convenient for Windy City, located in Chicago, to travel in and out of Asheville—where it seems to have no business aside from this litigation.

It also appears to the Court that the Western District of North Carolina has no local interest in this case. By contrast, the Northern District of California has a strong local interest in the technology community that has long resided there—including Facebook and Microsoft, which maintain a presence in the district. Moreover, because Microsoft has consented to litigate in that district, there will be no judicial efficiency cost incurred by transferring the case.

### IV. CONCLUSION

In short, "[t]his Court cannot stand as a willing repository for cases which have no real nexus to this district." *Cognitronics Imaging Sys., Inc.*, 83 F.Supp.2d at 699. The Court finds that convenience to the parties and witnesses, as well as the interests of justice, favor transferring this action to the Northern District of California.

7

**THEREFORE**, Defendant's Motion to Transfer Venue (Doc. No. 25) is **GRANTED**. This case is to be **TRANSFERRED** from the Western District of North Carolina to the Northern District of California pursuant to 28 U.S.C. § 1404 for such further proceedings as that court may deem appropriate.

**SO ORDERED.**

Signed: March 16, 2016

Graham C. Mullen
United States District Judge