UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA    *ORIGINAL*

Before The Honorable YVONNE GONZALEZ ROGERS, Judge

| | | |
|---|---|---|
| Windy City Innovations, LLC,) | | **Case Management** |
| ) | | **Conference** |
| Plaintiff, ) | | |
| ) | | |
| VS. ) | | NO. C 16-01730YGR |
| ) | | |
| Facebook, Inc., ) | | Pages 1 - 14 |
| ) | | |
| Defendant. ) | | Oakland, California |
| _____) | | Monday, February 12, 2018 |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

For Plaintiff:          Caldwell Cassady & Curry
                        2101 Cedar Springs Road, Suite 1000
                        Dallas, Texas  75201
                BY:     BRADLEY W. CALDWELL,
                        WARREN McCARTY, ATTORNEYS AT LAW

                        Banys PC
                        1032 Elwell Court, Suite 1000
                        Palo Alto, California  94303
                BY:     JENNIFER L. GILBERT, ATTORNEY AT LAW


For Defendant:          Cooley LLP
                        1299 Pennsylvania Avenue N.W.
                        Suite 700
                        Washington, D.C.  20004
                BY:     PHILLIP MORTON, ATTORNEY AT LAW

                        Cooley LLP
                        3175 Hanover Street
                        Palo Alto California 94304-1130
                BY:     HEIDI KEEFE, ATTORNEY AT LAW


Reported By:         Raynee H. Mercado, CSR No. 8258

   Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

```
 1    Monday, February 12, 2018                              2:09 p.m.
 2                         P R O C E E D I N G S
 3         THE CLERK:  Calling civil action 16-1730, Windy City
 4    Innovations versus Facebook, Inc.
 5       Counsel, please come forward and state your appearances.
 6         MR. CALDWELL:  Good afternoon.  Brad Caldwell, and
 7    with me, my colleague Warren McCarty on behalf of Windy City.
 8    And also with us is Ms. Jennifer Gilbert.  And we're ready to
 9    proceed, Your Honor.
10         THE COURT:  All right.  Good afternoon.
11         MR. MORTON:  Good afternoon.  Phillip Morton on
12    behalf of defendant Facebook Inc.  And with me is Heidi Keefe.
13         THE COURT:  Okay.  Good afternoon.
14         MS. KEEFE:  Good afternoon, Your Honor.
15         THE COURT:  Okay.  You need a schedule.  The
16    defendants' request to stay is denied.  The plaintiff's
17    request to expand is denied.
18       We're going to move this case forward in the manner in
19    which it is currently postured.  And that's the way it's going
20    to be.
21       So if someone actually takes your appeal, let me know.
22    Otherwise, let's get with it.
23       So looking at that proposed schedule, any comments?
24         MR. CALDWELL:  Not from the plaintiff, Your Honor,
25    other than I think that the parties agreed on the middle
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1    column there, so I don't --
2            **MR. MORTON:**  Yeah.  Yes, that's true.  We -- We've
3    agreed on all the dates.  And then subject to your -- to Your
4    Honor's convenience, we need to set a *Markman* date.
5            **THE COURT:**  Right.  Okay.  So you'll get your -- and
6    we'll just go through these to make sure that you didn't give
7    me a Saturday or Sunday, which sometimes happens in your rush.
8        Exchange of proposed terms, February 26.  Preliminary
9    constructions, March 19th.  Damages contentions, April 3rd.
10       By the way, what is your preliminary damages estimate as
11   you're required to provide us at this time under the local
12   rules?
13           **MR. CALDWELL:**  I don't know, Your Honor.  I --
14           **MR. McCARTY:**  Your Honor, preliminary damages
15   estimate will be based on the licensing history of the
16   technology of the patents, of which there are now three
17   licensees.  And as far as a specific number, Your Honor?  Is
18   that what you're looking for?
19           **THE COURT:**  Yeah, that's what's required by our rules
20   now.
21           **MR. McCARTY:**  So under the current framework of the
22   licensing policy that our client has established, $25 million.
23                   (Off-the-record discussion.)
24           **MR. McCARTY:**  Warren McCarty on behalf of the
25   plaintiff.

1 **THE CLERK:** And can you tip your mic up because
2 you're tall.  There you are.  Thank you.
3     **THE COURT:** Okay.  25 million for what is left and
4 what is currently being litigated?
5     So we've got three patents.  I didn't count the number of
6 claims.
7     **MR. McCARTY:** Yes, Your Honor.  That's -- That's
8 right.
9     **MR. MORTON:** Your Honor, I believe there are two
10 patents left, and there are nine claims.
11     **THE COURT:** Okay.  Then in my rush, maybe I misread
12 this.  I've got the '245, the '552 and '657?
13     **MR. MORTON:** Your Honor, the '552 does not have any
14 asserted claims --
15     **THE COURT:** Oh, I see.
16     **MR. MORTON:** -- currently.
17     **THE COURT:** Yes, you're right.
18             (Simultaneous colloquy.)
19     **MR. MORTON:** After the IPR's.
20     **THE COURT:** Perfect.  Okay.  Thank you.
21     Okay.  Joint claim construction and prehearing statement,
22 that's April 13th.  Responsive damages contentions, May 3rd.
23 Completion of claim construction, May 14th.  Opening briefs,
24 May 28th.  ECF is open.  We are closed.
25     June 11th is responsive briefs.  June 18th is the reply.

1 (Pause in the proceedings.)
2 **THE COURT:** I'm not going to be here. You want an
3 extra week?
4    Do you want an extra week for your reply briefs?
5 **MR. CALDWELL:** For our -- if --
6 **THE COURT:** I won't be here, so I'm not looking at
7 it.
8 **MR. CALDWELL:** Yes, Your Honor, then certainly if
9 there's going to be an extra week built in anyway before --
10 **THE COURT:** All right. So then we do the technology
11 tutorial. We're looking at July.
12    Okay. How about the 13th? 9:00 a.m.?
13 **MR. MORTON:** That's acceptable to defendant, Your
14 Honor.
15 **MR. CALDWELL:** Sounds good to us, Your Honor.
16 **THE COURT:** Okay.
17    And then we can do the *Markman* two weeks later on the
18 27th. Does that work?
19 **MR. CALDWELL:** That I believe works for us, Your
20 Honor.
21 **MR. MORTON:** That works for defendant, Your Honor.
22 **MR. CALDWELL:** Is there a certain time that, Your
23 Honor, typically starts a *Markman*?
24 **THE COURT:** 9:00 a.m.
25    Okay. And then everything else will flow from service of

1   the *Markman* order --

2          **MR. CALDWELL:**  Yes, Your Honor.

3          **THE COURT:**  -- which is fine.

4   I'm not going to give you a trial date yet.  And what I
5   will do with respect to summary judgment, we'll have a
6   discussion before -- I'll probably -- once the *Markman* goes
7   out, I'll give you a case management conference and you'll
8   come back in so we can talk about the briefing on the summary
9   judgments.

10  The way I structure that depends on what it is that's
11  left, who's making -- whether they're cross-motions or not.
12  If I do cross-motions, then I -- I frame it so that I have one
13  less brief, but we can talk through that.

14  Let's -- Let me just give you an overview of how I do
15  claim construction and the tutorial 'cause I don't think I'll
16  see you before then.

17  In terms of tutorial, it doesn't matter to me whether the
18  lawyers do the presentation or the experts.  I'm just really
19  interested in learning what it is you have to teach me.
20  Sometimes the experts have done a great job.  Sometimes they
21  haven't.

22  Perhaps that's not a bad thing for you to figure out if
23  your expert can't communicate because while I may not be a
24  rocket scientist, I think that I generally am about as smart
25  as the jurors.  So if they can't teach me, then likelihood

1   that they're going to teach the jurors is probably low.
2       One of the things that I do is, so that I make sure I
3   understand, I will sometimes have both experts up there, and I
4   will question them back and forth until I know that I
5   understand what it is that they're coming from and where the
6   disagreements are.
7       So all of that is off the record.  That is, I mean, we'll
8   still keep a record, but you cannot use it in any of your
9   briefing, et cetera, and you will be sanctioned if you do.
10      Okay?
11      In terms of the claim construction, I've rarely gone
12  beyond three hours.  That's about all I can take.  You have --
13  You get ten terms.  That's all I'll construe.
14      My office is a public office.  And this is one case.  I
15  have 300.  So you only get so much of my time.  Make sure to
16  choose wisely.
17      And, again, what we will do is we'll take them from the
18  most important to the least important so you'll be able to
19  argue.  If you're making presentations, I would suggest that
20  you -- you divide them up by term because I will go back and
21  forth with you all until I'm satisfied.  And put the most
22  important first because some lawyers keep talking and then
23  they run out of time and they don't get to argue the ones at
24  the end, so you're going to have to manage your time pretty
25  well.

1           All right?

2           Back on the tutorial, the thing I forgot to tell you, it's
3   not good or bad.  It's not an indication of -- that I believe
4   in a defense case versus a plaintiff's case.  I have to
5   understand the forest before I understand the trees.  That's
6   just way I think.

7           And what I've found is that that typically means the
8   defense goes first because they want to tell me what everybody
9   knew about the technology and the whole history of everything,
10  and then the plaintiffs usually want to say, no, this is very
11  innovative; it was very particular, et cetera.

12          And that's all fine, but in terms of how I think, I tend
13  to -- need to understand the forest before I go get into the
14  trees.  Okay?

15          Damages and trial.  I'm giving you -- telling you this now
16  so that you don't complain later.  I haven't spent much time
17  with your patents, so I'm not exactly sure what it is or how
18  you think you're going to try this case if we ever get there.

19          But I have excluded wonderful presentations, technology
20  kind of recreations of how the technology works, I've excluded
21  them from trial in patent cases when they're raised at the
22  last minute.

23          Why?  Because, you know, the proponent typically says,
24  but, judge, it's just a demonstrative.  My view, no, it's not
25  really a demonstrative.  It's more a reenactment.  You're

1  trying to -- and, again, this may or may not apply to your
2  case, but you all do patent cases so perhaps it applies to
3  another.  You're somehow trying to show a jury how it is the
4  technology works or what the innovation is.  And if you're
5  going to do that, that's great because jurors have a hard time
6  understanding technology.
7      But you better figure out what it is and how it is you
8  want to disclose it and then you better disclose it to the
9  other side so that they can take a deposition or they can
10 really challenge the accuracy of whatever it is you're
11 attempting to show the jury.
12     If you do not do it, I don't care how much it costs you, I
13 will exclude it.
14     The other thing, you better identify and have subject to
15 disposition any in-house expert.  Again, I've excluded
16 testimony of in-house experts where I have excluded the expert
17 who was disclosed and then because that expert was disclosed,
18 the side who was on the losing side tries to bring in the
19 in-house person as an end-run against my order claiming that
20 they're fact witnesses.
21     Again, doesn't work for me.  They'll be excluded.  Okay?
22         **MR. CALDWELL:**  Okay.
23         **THE COURT:**  Another issue with respect to juries and
24 trials and damages.  You don't get two bites at the apple with
25 me on damages.  There are many judges who will say, if a

*Daubert* is brought, that, you know, the -- they grant the *Daubert* and they give you a second shot.

I'm not going to do that. That increases my workload, and it gives you a second shot.

I will let you tweak if I think that it's reasonable on the margins, so there are times when I let lawyers, you know, make kind of small -- what I would consider to be small changes, but I expect the lawyers to be their own judge on reasonableness. And if you were not and if you don't, you're going to find yourself without an expert at trial. Okay?

Let's see. What other tips for a patent case?

I don't have in here any -- in your schedule, there's no note of ADR, so when are you going to ADR?

**MR. CALDWELL:** Your Honor, we have mediated in December of, I think, 2016. And that wasn't productive. At the time --

**THE COURT:** Right, but a lot's happened since then.

**MR. CALDWELL:** I agree with you actually. And I request -- in fact, we mediated with Judge Infante, and he actually suggested to us that now based on the positions which -- the defendants' positions at the time were largely predicated on the IPR's.

**THE COURT:** Yeah.

**MR. CALDWELL:** Now that a lot of claims have come out, he actually recommended to us that we go back to

1   mediation, and we agree.
2       My understanding is Facebook isn't interested at least
3   until after -- after *Markman*, but I've -- obviously not
4   speaking for Facebook on that issue.
5           **MR. MORTON:**  So for Facebook, we are happy to listen
6   to any offers that Windy City has and have discussions with
7   them.  But we think mediation would be more productive after
8   we have a claim construction order.
9           **THE COURT:**  Well, what is it, then, that you
10  learned -- If you didn't learn anything from the IPR process,
11  why did you go?  I mean, what is it that -- that -- the
12  landscape's now changed.  So why aren't you willing to go and
13  try again at this juncture?
14          **MR. MORTON:**  Well, we are willing to try again.  We
15  just think that it would be better to have more information
16  with a claim construction order before we engage in further
17  mediation.
18          **THE COURT:**  Ms. O'Keefe (phonetic)?
19          **MS. KEEFE:**  Your Honor, in terms of what have we
20  learned, we've learned that a number of the claims are
21  actually invalid.  But that had nothing to do with our
22  non-infringement positions, which we also had before the IPR
23  process, and those are still very strong we believe.  And that
24  was also something that we spoke with Judge Infante about.
25      Those decisions can't really be tweaked or changed for

1    both parties until after claim construction.  That's why we
2    think that's the best time.
3        Similarly we're always open to talk.  We think just that a
4    formal mediation would be best served in terms of expense to
5    the parties after claim construction because of the
6    non-infringement positions.
7            **THE COURT:**  Well, did you challenge the -- the
8    surviving claims at the -- at the IPR?
9            **MS. KEEFE:**  So --
10           **THE COURT:**  Because we still have, what --
11           **MS. KEEFE:**  There's nine claims left, Your Honor.
12           **THE COURT:**  So five with the '245 and four with the
13   '657.
14           **MS. KEEFE:**  That's correct, Your Honor.  And those
15   were challenged with the IPR, and what the Patent Office found
16   was that we had not shown by a preponderance unpatentability.
17       But nothing regarding infringement or non-infringement
18   positions was before the PTAB during the IPR.  And my point
19   was that mediation is best served after claim construction
20   because that's where issues of non-infringement crystallize.
21       We think our position's actually been strengthened with
22   respect to the claims that have been invalidated, and the ones
23   that are left are the ones for which we always had strong
24   non-infringement positions and we think even stronger now.
25           **THE COURT:**  And are you both willing to go back to

1  Infante?
2      **MS. KEEFE:** Yes, Your Honor.
3      **MR. CALDWELL:** Yes, Your Honor.
4      **THE COURT:** All right. Well --
5      **MS. KEEFE:** I also know, Your Honor, that he's taking -- I don't want to call it a sabbatical, but I've been having a hard time getting on his calendar for spring. He said he wasn't doing anything until summer anyway, so that actually fits about in the time period, fortuitously.
10     **THE COURT:** Well, is the question of when I get your order out depends on whether or not I'm in trial. So what I would suggest is that you get on his calendar for kind of mid-September.
14     **MS. KEEFE:** We can do that, Your Honor.
15     **THE COURT:** All right?
16     And then I'll put you on a compliance calendar for two weeks. Let me know what date you got.
18     **MS. KEEFE:** Thank you, Your Honor.
19     **MR. MORTON:** Thank you.
20     **MR. CALDWELL:** Yes, Your Honor.
21     **THE COURT:** Okay.
22     Questions?
23     **MR. CALDWELL:** Not from the plaintiff, Your Honor.
24     **MR. MORTON:** None from defendant.
25     **THE COURT:** So far it doesn't look like there are any

```
1   discovery disputes, so hopefully we'll keep it that way,
2   right?
3        Happy to see everybody, but I don't think you want to be
4   spending a lot of time in my courtroom which is where you'll
5   be if you end up in discovery disputes.
6        All right.  Safe travels.
7             MR. CALDWELL:   Thank you, Your Honor.
8             MR. MORTON:   Thank you, Your Honor.
9             MS. KEEFE:   Thank you, Your Honor.
10              (Proceedings were concluded at 2:30 P.M.)
11                              --o0o--
12
13                       **CERTIFICATE OF REPORTER**
14
15            I certify that the foregoing is a correct transcript
16  from the record of proceedings in the above-entitled matter.
17  I further certify that I am neither counsel for, related to,
18  nor employed by any of the parties to the action in which this
19  hearing was taken, and further that I am not financially nor
20  otherwise interested in the outcome of the action.
21
22            _____
23            Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR
24                    Thursday, March 1, 2018
25
```