# EXHIBIT A

# Cooley

Heidi L. Keefe                                                                                                           Via ECF
+1 650 843 5001
hkeefe@cooley.com

January 15, 2019

Hon. Yvonne Gonzalez-Rogers
United States District Court
1301 Clay Street
Oakland, CA  94612

**Re:  Windy City Innovations, LLC. v. Facebook, Inc., Case No. 4:16-cv-01730-YGR**

Dear Judge Gonzalez-Rogers:

Facebook respectfully submits this letter brief requesting a pre-filing conference on Friday, January 25, 2019 at 2:00pm regarding Facebook's proposed motion for summary judgment of invalidity and non-infringement. The grounds for Facebook's motion are explained below.

Windy City filed this action as a four-patent case accusing various aspects of Facebook's Messenger functionality.  Fact discovery and IPRs have whittled Windy City's infringement allegations down to only one patent, U.S. Patent No. 8,458,245,[1] and only one independent claim and four dependent claims of that patent.  The only remaining independent claim (claim 19) is directed to a system in which a first participator computer sends a "private message including a pointer pointing to a communication that includes pre-stored data" such as video, audio, graphic or multimedia, and the "communication [is] sent in real time."  A second participator computer receives the "private message" and "internally determines whether or not the second participator computer can present the [pre-stored] data," and if not "obtain[s] an agent with an ability to present the pre-stored data."  For the reasons discussed below, Windy City's remaining asserted claims of the '245 patent are invalid under 35 U.S.C. § 101 and not infringed on several grounds.

## The '245 Patent is Invalid Under 35 U.S.C. § 101

Facebook seeks leave to move for summary judgment that the asserted claims of the '245 patent are invalid for failure to claim patent eligible subject matter under 35 U.S.C. § 101. An issue of law for the Court, a claim falls outside § 101 where, as here: (1) it is directed to an abstract idea, and (2) the claims lack an "inventive concept" sufficient to transform their abstract nature into a patent-eligible application. *See, e.g.*, *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citing *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014)).

At their heart, the asserted claims of the '245 patent are directed to the abstract idea of sending a message from one party to another party in which, if the recipient (second) person cannot present the message, she obtains something to view it.  This abstract concept can be analogized to a first person mailing a video tape to a second person.  If the second person has a video tape player, she plays the tape.  But if the second person instead only has a DVD player, she obtains a tape player capable of playing the contents of the tape.

At best, the asserted claims describe a generic messaging system that recites the further feature of determining the receiving computer's capabilities and obtaining software that would allow for certain content to be displayed.  But the asserted claims describe this feature with an exceedingly high level of generality; it does not explain *how* the computer actually determines whether the content can be displayed,

---

[1] Windy City is asserting claims 19, 22, 23, 24, and 25 of the '245 patent.

# Cooley

Hon. Yvonne Gonzalez-Rogers
January 15, 2019
Page Two

or *how* the necessary display software is to be obtained.  *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (finding claims directed to converting, routing, controlling, monitoring and accumulating records about streams of audio and video data invalid because they did "not sufficiently describe how to achieve these results in a non-abstract way").

Regarding Step Two of *Alice,* the asserted claims do not contain any inventive concept that would transform the nature of the claim into a patent-eligible application of the abstract idea.  The asserted claims recite generic computing components such as an "Internet network," "participator computers," a "computer system," "pre-stored data," and arranges those components in known, conventional ways.  *Electric Power Group*, 830 F.3d at 1355.  The claims merely use these generic components to claim a first person sending a message, a second person attempting to view that message, and if the second person cannot view the message, obtaining something (an "agent") to view it.  *Epic IP LLC v. Backblaze, Inc.*, --- F.Supp.3d ----, Case No. 1-18-141-WCB, 2018 WL 6201582, at *11 (D. Del. Nov. 21, 2018) (Bryson, J., judge of the Federal Circuit, sitting by designation) (finding claims that "merely call for the initiation of a chat session that is separate from any previously established chat room, by use of a set of generic computer components and display devices" did not recite an inventive concept).

## Facebook Messenger Does Not Infringe the '245 Patent

Facebook requests leave to move for summary judgment of non-infringement on the following grounds: (1) Facebook Messenger does not send communications in "real time"; (2) "the private message" sent by the first user of Facebook Messenger is not the same as the message received by the second user; (3) Facebook Messenger never "internally determines whether or not" the computer or mobile device can present pre-stored data; (4) Facebook does not provide the complete system required for direct infringement; and (5) Facebook does not indirectly infringe any asserted claim.

**There is no dispute that Facebook does not infringe under its construction of "real time."** Claim 19, the sole asserted independent claim, requires the communication that includes the pre-stored data "being communicated in real time."  As explained in Facebook's claim construction briefing, based on statements made by Windy City during prosecution, "real time" should be construed as "immediately, without being stored on a server." (*See, e.g.*, D.I. 108 at 6-7.) The Court has not yet issued a claim construction order, but if it adopts Facebook's proposed construction, such a ruling would be dispositive of the entire case. Windy City's expert has conceded that there would be no infringement of the '245 patent if Facebook's construction is adopted, because the alleged "communication" is stored on a Facebook server before delivery.  (Jones Tr. at 24-25.)  Summary judgment of non-infringement should be entered if the Court adopts Facebook's proposed construction of "real time."

**"The Private Message" sent by the first user is not the same message received by the second user.** Claim 19 requires (1) a "first of the plurality of participator computers" to communicate "<u>a</u> private message" to the computer system and (2) that "the computer systems communicates <u>the</u> private message" to a second participator computer, "<u>the</u> private message" referring back to the same message sent by the first participator computer recited earlier in the claim.  *See, e.g., Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1343 (Fed. Cir. 2008) (noting that claim terms reciting "the" or "said" are "anaphoric phrases, referring to the initial antecedent phrase.").  It is undisputed that the "private message" the first computer sends to Facebook's servers is not the same "private message" that the second computer receives from the servers. (*See* Jones Tr. at 69:14-72:3.)  Thus, summary judgment of non-infringement of all asserted claims is appropriate.

**Facebook Messenger Never "Internally Determines" Whether the Second Participator Computer Can Present Pre-Stored Data.**  Claim 19 also includes the limitation "the second <u>participator computer internally determines</u> whether or not the second <u>participator computer can present</u> the pre-stored data, if it

# Cooley

Hon. Yvonne Gonzalez-Rogers
January 15, 2019
Page Three

is determined that the second <u>participator computer can not present</u> the pre-stored data then <u>obtaining an agent with an ability</u> to present the pre-stored data." Windy City's expert opined that "a participator computer is a computer or mobile device running Messenger client software."  (Jones Infr. Rpt., ¶ 317.) Thus, it is the receiving computer or mobile device that must "internally determine" whether or not it can present the accused types of pre-stored data. Windy City's expert agrees that the accused Facebook Messenger application never determines whether the computer or mobile device itself is capable of presenting the accused types of pre-stored data.  (Jones Tr. at 87:2-87:14, 101:10-18).  Windy City's expert admitted, in fact, that the receiving computer or mobile device *already has* the supposed agent used to communicate. Indeed, Windy City's expert confirmed that he has no opinion that Facebook infringes if Facebook Messenger must check to see whether the actual computer or mobile device (with all of its software) can present the pre-stored data.  (*id.* at 104:20-105:5).  Accordingly, summary judgment of non-infringement of all asserted claims is appropriate.

**No Direct Infringement by Facebook.** The asserted claims are directed to a system which includes both a computer system and a plurality of participator computers, which are capable of sending and receiving messages. To be liable for direct infringement of a system claim, "a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion Data Systems, LLC v. Qwest Comms. Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).  Facebook does not provide the claimed system as a whole because Facebook does not provide the accused participator computers (*i.e.,* Android or iOS devices, or computers running web browser software). Nor did Windy City put forth any evidence that Facebook directs its users to use the claimed system nor do Facebook's users act as Facebook's agents. *Id.* at 1287 (no liability for direct infringement of customers where the accused infringer "in no way directs its customers to perform nor do its customers act as its agents" and only "provides software and technical assistance.") In fact, Facebook expressly states tells its users in its terms of service that it does "not control or direct" their actions.[2]  In sum, there is no evidence that Facebook has directly infringed any asserted claim and therefore summary judgment of non-infringement is appropriate.

**No Indirect Infringement.**  Liability for indirect infringement requires knowledge of the patent and knowledge of the alleged infringement. *Commil USA, LLC v. Cisco Systems, Inc.*, 135 S.Ct. 1920, 1926 (2015) ("In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'") (*citing Global-Tech Appliances, Inc. v. SEB S.A,* 131 S.Ct. 2060, 2068 (2011)); *id.* ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement.") (*citing Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U. S. 476, 488 (1964)).  There is no allegation (let alone evidence) that Facebook had knowledge of the asserted '245 patent prior to Windy City's filing of the lawsuit on June 2, 2015.  Similarly, with respect to post-filing activities, Facebook was not willfully blind to its alleged infringement, and Windy City has no evidence that Facebook believed that it infringed the '245 patent and no evidence that Facebook took deliberate actions to avoid learning about any alleged infringement of the '245 patent.  Indeed, Windy City's expert admitted to the lack of any evidence thereof.  Moreover, there can be no contributory infringement because Windy City's expert agreed that Facebook Messenger has numerous non-infringing uses, including sending text messages, sending group messages with attachments, audio and video calls and payments.

Sincerely,


*/s/ Heidi L. Keefe*
Heidi L. Keefe

---

[2] http://www.facebook.com/terms.php