**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **WINDY CITY INNOVATIONS, LLC,** | **Case No.:  16-CV-1730 YGR** |
|     **Plaintiff,** | **ORDER GRANTING FACEBOOK'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT MOTIONS TO STRIKE AND EXCLUDE EXPERT OPINIONS** |
|     v. | |
| **FACEBOOK, INC.,** | **DKT. NOS. 153, 155, 160** |
|     **Defendant,** | |

Plaintiff Windy City Innovations, LLC brings this patent infringement action against defendant Facebook, Inc. stemming from alleged infringement of Windy City's U.S. Patent No. 8,458,245 (the "'245 patent") entitled "Real Time Communications System" issued June 4, 2013.[1] Presently before the Court are three motions.  Facebook moves for summary judgment (Dkt. No. 160) on the grounds that: (1) Windy City lacks standing; (2) Claim 19 and its dependent claims of the '245 Patent are invalid under 35 U.S.C. section 101; and (3) Facebook does not infringe the '245 patent directly or indirectly.  In addition, both Facebook and Windy City have moved to strike or exclude certain opinions of their opposing experts. (Dkt. Nos. 153, 155.)

The Court, having duly considered the pleadings and papers in support of and in opposition to the motion for summary judgment, along with the admissible evidence, rules as follows: Facebook's Motion for Summary Judgment is **GRANTED** on grounds of invalidity under Section 101.  In light of the Court's ruling on summary judgment the motions to strike or exclude expert opinions are **DENIED AS MOOT**.

---

[1]  All other patent issues originally raised in the complaint have been resolved through the IPR process.  The '245 Patent is a continuation of earlier applications in the patent family of U.S. Patent No. 5, 956,491, filed April 1, 1996.

United States District Court
Northern District of California

United States District Court
Northern District of California

## I. APPLICABLE STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). For issues where the opposing party has the burden of proof, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 250 (internal quotation marks omitted). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

A moving party defendant bears the burden of specifying the basis for the motion and the elements of the causes of action upon which the plaintiff will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the plaintiff to establish the existence of a material fact that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In the summary judgment context, a court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson,* 357 F.3d 1072, 1075 (9th Cir. 2004).

## II. STANDING

As a first basis for summary judgment, Facebook argues that Windy City does not have standing to bring this action because it never acquired ownership rights in the '245 Patent or '491 patent family. The Court's jurisdiction is a prerequisite to consideration of the merits of a case. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93-102 (1998). Because the

United States District Court
Northern District of California

question of standing is jurisdictional, the Court addresses Facebook's standing arguments as a threshold matter.  *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) ("A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit.") (citing *Keene Corp. v. United States,* 508 U.S. 200, 207 (1993)).

>        1.      Factual Background[2]

The online chat system software that is the subject of the '245 Patent was developed under a Work for Hire Agreement between UtiliCorp, an energy company, and American Information Systems, Inc. ("AIS").  Daniel L. Marks is listed as the sole inventor on the '245 Patent.  Marks was an employee of AIS from approximately March 1995 through December 1995.

On May 17, 1995, AIS sent a Work for Hire Agreement to Brian Spencer and Tony Fung of Utilicorp.  The Work for Hire Agreement represented AIS's offer of a "revised contract regarding development of the chat forum software" and detailed the services to be provided for UtiliCorp by AIS.  The Work for Hire Agreement stated, in part, that it was a "revised contract regarding development of the chat forum software."  (Declaration of Phillip E. Morton In Support of Motion, Exh. 2 ["Work for Hire Agreement"].)  It stated that AIS would provide services to UtiliCorp, as follows: (1) TelnetD server modification to allow immediate entry to a moderated, interactive chat session with features as listed in Appendix A; (2) moderated store-and-forward messaging system with threading capabilities for articles.  (*Id.*)   Appendix A stated:

>    Chat server features:
>    (1) user/password authentication system
>    (2) telnet vt100 textual based interface
>    (3) no less than 20 moderated channel capabilities
>    (4) no less than 20 unmoderated channel capabilities
>    (5) remote account maintenance capabilities
>    (6) logging of basic user transactions
>    (7) online help
>    (8) who's online feature
>    (9) rotating messages feature
>    (10) online profile/authentication form

---

[2]  Unless otherwise stated, these facts are undisputed.

(*Id*.)  In addition, the Work for Hire Agreement specified that the intellectual property created was assigned to UtiliCorp as follows:

> All software, data, technology, designs or innovations which are made, conceived, reduced to practice, designed or developed by AIS for the purpose of fulfilling its obligations under this Agreement **shall be and remain** the sole property of Client [UtiliCorp].  **AIS hereby assigns** to [UtiliCorp] all such materials and all related copyrights or other intellectual property rights **pending** a fair-market-value joint licensing agreement between [UtiliCorp] and AIS.

(*Id*. emphasis supplied, hereinafter "Assignment Clause.")

On June 5, 1995, Fung signed the Work for Hire Agreement on behalf of UtiliCorp and returned it by fax to AIS, thereby accepting the terms offered.  Over the next several months, Marks developed the UtiliCorp Power Quality Chat system.[3]  AIS and UtiliCorp regularly communicated about the scope and progress of that assignment.  (*See* Morton Decl. Exh. 1 [Marks Depo.] at 222:3-223:4; 237:21-239:5.)

On August 15, 1996, Marks entered into an assignment of rights to AIS with respect to the '245 Patent.[4]  On March 13, 1998, AIS entered into an assignment of rights concerning the '245 Patent to its attorney, Peter Tryzna, in satisfaction of its unpaid legal bills. (Morton Decl. Exh. 3 [Tryzna Depo.] at 46-47, 52-53, 193.)  Tryzna entered into an assignment of rights for the '245 Patent to Windy City.

### 2.    Chain of Title

Facebook argues that Windy City has no rights to the alleged inventions in the '245 patent because Marks and AIS never acquired any rights they could assign to Tryzna, and therefore Tryzna never had any rights to assign Windy City.  Rather, Facebook contends that the rights belonged to UtiliCorp based upon the Work for Hire Agreement.  To this end Facebook argues as follows: Marks developed the chat system software to fulfill AIS's obligations under the UtiliCorp's Work for Hire Agreement and had the features described therein.  According to Marks, the UtiliCorp chat

---

[3]  UtiliCorp filed federal trademark applications for "Power Quality Chat" and "PQ Chat" in June 1995. (Morton Decl. Exh 6.)

[4]  The '245 Patent was part of the '491 Patent family and the assignment concerns the '491 Patent and its continuation application.  (Morton Decl. Exh. 12.)

United States District Court
Northern District of California

United States District Court
Northern District of California

system became the subject of the '245 Patent.  Facebook then argues that Marks' statements should be considered party admissions since he was designated as Windy City's corporate representative on those topics. (*See* Declaration of Philip E. Morton In Support of Reply Exh. 24 [Marks Depo.] at 71:4-22, 72:23-73:16.)  As further corroborating evidence, the '245 patent itself states that a chat transcript produced by the UtiliCorp chat system "exemplifies the use of the present invention" and that the source code for the UtiliCorp chat system "provid[es] a detailed description of a preferred embodiment of the present invention." (Morton Decl. Exh. 4 ["'245 Patent"] at 11:60-21:17, 4:7-59; *see also* Morton Reply Decl. Exh. 24 [Marks Depo.] at 228:18-23; 230:3-13.)  Thus, Facebook contends all intellectual property rights in the chat system were "the sole property of" UtiliCorp under the Assignment Clause, and the purported transfers of rights were without effect.

Windy City disagrees, contending that the Assignment Clause did not effect an automatic, present assignment to UtiliCorp, and no intellectual property rights were transferred to it.  Rather, the Assignment Clause was a contingent promise to assign that would not come into existence until the parties entered into a "fair-market-value joint licensing agreement."  Because they did not do so, the assignment did not occur and Facebook's lack of standing argument fails.

A court has jurisdiction in a patent action only if the plaintiff has standing to sue on the date it files suit.  *Keene Corp.,* 508 U.S. at 207; *Minneapolis & St. Louis R.R. v. Peoria & Perkin Union Ry. Co.,* 270 U.S. 580, 586 (1926).  Thus, in a patent infringement action, the plaintiff must hold enforceable title to the patent at the time of filing or else face dismissal.  *Abraxis*, 625 F.3d at 1364.

"Although state law governs the interpretation of contracts generally, the question of whether a patent assignment clause creates an automatic assignment or merely an obligation to assign is intimately bound up with the question of standing in patent cases."  *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.,* 517 F.3d 1284, 1290 (Fed. Cir. 2008).  Thus, a court must interpret a patent assignment clause under Federal Circuit law.  *Id.*; *see also Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 124, 1253 (Fed. Cir. 2000).  Where a contract expressly grants rights in future inventions, "no further act [is] required once an invention [comes] into being," and "the transfer of title [occurs] by operation of law."  *FilmTec Corp. v. Allied Signal Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991) (contract provided that inventor "agrees to grant and does hereby grant" all rights in future

United States District Court
Northern District of California

inventions); *see also Speedplay,* 211 F.3d at 1253 (contract provided employee's inventions within the scope of the agreement "shall belong exclusively to [employer] and [employee] hereby conveys, transfers, and assigns to [employer] . . . all right, title and interest in and to Inventions"); *Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,* 583 F.3d 832, 841–42 (Fed.Cir.2009) (finding present assignment in the language "I will assign and do hereby assign"), *aff'd,* 563 U.S. 776 (2011).  However, an assignment subject to a "subsequent written instrument" is agreement to assign and not enforceable.  *See Abraxis,* 625 F.3d at 1365.  Contracts which merely create future obligations for the inventor result in equitable rights once the inventions are made "but do not by themselves 'vest *legal* title to patents on the inventions in the promisee.'" *DDB Techs.,* 517 F.3d at 1290 (citing *Arachnid, Inc. v. Merit Indus.*, 939 F.2d 1574, 1576, 1581 (Fed. Cir. 1991)).  Phrasing the agreement in "will be" or "shall be" language indicates a promise to assign in the future, not a present assignment.  *See Arachnid,* 939 F.2d at 1581 (where contract provided inventions "*shall be* the property of [Arachnid], and all rights thereto *will be assigned* . . . to [Arachnid]"  agreement "does not rise to the level of a present assignment of an existing invention, effective to transfer all legal and equitable rights therein to Arachnid").

Here, the Assignment Clause states that "all . . . innovations which are made . . . by AIS for the purpose of fulfilling its obligations under this agreement shall be and remain the sole property of [UtiliCorp]." (Morton Decl. Exh. 2).  The second sentence of the assignment however expressly conditioned assignment on a future event, that is, the parties entering into a joint licensing agreement.  Thus: "AIS *hereby assigns* . . . intellectual property rights *pending* a fair-market-value joint licensing agreement between [UtiliCorp] and AIS." (Emphasis supplied.)  The record offers no evidence that a subsequent agreement giving Utilicorp the intellectual property rights to the invention ever materialized.  To the contrary, Windy City offers the declaration of Brian Spencer, formerly of UtiliCorp, who was personally involved in the project as a representative of UtiliCorp. He informs that UtiliCorp "did not agree to or wish to own any intellectual property or inventions that came from the [chat system] work, or any other work, by AIS."  (Spencer Decl., Dkt. No. 131-4, ¶ 5.)  UtiliCorp considered the idea of owning the intellectual property but ultimately decided against it in favor of paying only for software license fees for use of the chat system.  (*Id*. at ¶ 6.)

After AIS delivered the basic chat system, it pitched an additional project to UtiliCorp for a more advanced chat system, but UtiliCorp declined.  (*Id.*)

In the absence of evidence of an agreement transferring rights to Utilicorp, the patent rights apparently remained with AIS and Marks, making the chain of title as represented by Windy City. At a minimum, disputed issues of material fact as to the ownership rights preclude dismissal of the action for lack of standing.[5]  Therefore, summary judgment on these grounds is **DENIED**.

## III.    INVALIDITY UNDER SECTION 101

Having found that jurisdiction is established, the Court turns to Facebook's motion for summary judgment on the grounds that the '245 Patent is invalid under section 101.  Claim 19 and its dependent claims are the only remaining claims asserted to have been infringed. Facebook contends that Claim 19 concerns an abstract idea implemented on generic components and therefore falls outside matters eligible for patent protection.  Windy City counters that the claims at issue both recite a specific apparatus that improves upon Internet communications technologies in non-abstract and unconventional ways to overcome technological problems existing at the time and are directed to a specific improvement for computer capabilities.

Claim 19 of the '245 Patent recites:

An apparatus to receive a communication via an Internet network, the apparatus including:

a computer system, and

a plurality of participator computers,

each of the participator computers communicatively connected to the computer system responsive to each of the plurality of participator computers being associated with a respective login name and a password;

a first of the plurality of participator computers being programmed to communicate such that a private message is sent to the computer system,

---

[5]  The Court further notes that automatic assignment appears contrary to AIS's contemporaneous understanding of the Work for Hire Agreement, as evidenced by the 1996 assignment from Marks to AIS and the 1998 assignment from AIS to Trzyna. (Morton Decl. Exh. 12.)

the private message including a pointer pointing to a communication that includes pre-stored data representing at least one of a video, a graphic, Sound, and multimedia;

the computer system, including a computer and a database which serves as a repository of tokens[6] for other programs to access, thereby affording information to each of the participator computers which are otherwise independent of each other; wherein

the computer system communicates the private message to a second of the plurality of participator computers; and

the second participator computer is programmed to receive the communication provided within the private message, which originates from the first participator computer,

the communication being sent in real time and via the Internet network, and the second participator computer internally determines whether or not the second participator computer can present the pre-stored data, if it is determined that the second participator computer cannot present the pre-stored data then obtaining an agent with an ability to present the pre-stored data, and otherwise presenting the pre-stored data independent of the first participator computer.

(*Id*. at 23:7-44.)

### A.   Section 101 Standard

In *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014), the Supreme Court reiterated its two-step framework "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id*. at 217 (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.,* 566 U.S. 66 (2012)).  In the first step, a court determines "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id*.  "The 'abstract ideas' category embodies the longstanding rule that an idea of itself is not patentable." *Id*. at 218 (internal quotations omitted).  Thus, "claims directed to 'analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Elec. Power Grp., LLC v. Alstom S.A*., 830 F.3d 1350, 1354 (Fed. Cir. 2016) (emphasis supplied).  The use of

---

[6]  The parties have stipulated that a "database" is "a collection of logically related data," a "private message" is a "message with only one intended recipient," and a "token" is a "piece of information associated with user identity." (Dkt. No. 104, Joint Claim Construction and Prehearing Statement, at 2.)

United States District Court
Northern District of California

United States District Court
Northern District of California

"existing computers as tools in aid of processes focused on 'abstract ideas'" does not transform an otherwise abstract idea. *Id.* at 1353.

If the claims at issue are determined to be abstract in the first step, they may nevertheless be considered patent-eligible if, in the second step, the elements of the claims individually or "'as an ordered combination" add enough to "transform the nature of the claim" into a patent-eligible application of the abstract principle. *Alice*, 573 U.S. at 217 (quoting *Mayo*). "[A]n inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), *cert. denied,* 138 S.Ct. 672 (2018); *see also Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (patent-ineligibility focuses on the scope of the claims, not the length of the specification). Thus, the court must decide whether the claims recite something beyond "well-understood, routine, conventional activities previously known to the industry." *Alice,* 573 U.S. at 225. As in step one, simply reciting the use of a computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. *Id.* at 223.

**B.     *Alice* Step-One Analysis**

On the *Alice* stage one question, Facebook argues Claim 19 describes nothing more than an abstract process for sending a message, determining how to display it, and locating the means to display it. The patent describes generalized steps to be performed on a computer using conventional computer activity and existing capabilities, without specifying how the end result is achieved. Facebook argues the claims of the '245 patent do not recite how the second participator computer performs the function of determining whether or not it can present the pre-stored data, how the second participator computer obtains an agent with an ability to present the pre-stored data, what the agent is, or how it functions.

Windy City counters: Claim 19 is specifically directed to an improved architecture for communicating online. The computer architecture of Claim 19 is not simply the means for implementing some other invention; the computer *architecture* of Claim 19 *is the invention*. Thus, Claim 19 describes the architecture behind the claimed computer improvement by reciting: (1) how the multimedia is sent (*i.e.*, by pre-storing the data and utilizing a pointer associated with that pre-stored data); and (2) how it is transmitted to a recipient (*i.e.*, by

9

communicating the pointer and providing the recipient with the ability to determine internally how to present the data). (Oppo. at 12:5-10.)

"At step one, the court must first examine the patent's 'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018).  If the claim describes nothing more than the analysis that people go through in their minds, without more, it is abstract and therefore ineligible for a patent. *Elec. Power Group*, 830 F.3d at 1354.  In software cases, the step-one determination often turns on whether the claim sets forth a specific improvement in computer capabilities versus a process "for which computers are invoked merely as a tool." *Finjan*, 879 F.3d at 1303 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).  Courts find that patents are directed to an abstract idea where they do not claim a particular way of programming or designing software but only claim the resulting systems.  *Id.* at 1305–06.  Thus, the claim must state the way in which it will reach a result, not just the function or result itself.  *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1338, 1340-47 (Fed. Cir. 2018) ("[T]he claims do not recite how the attention manager performs the function of determining where to display images in the 'windowed' environment so that they do not interfere with a user's primary activity."); *Apple, Inc. v. Ameranth, Inc.,* 842 F.3d 1229, 1240-41 (Fed. Cir. 2016) (patents directed to an abstract idea because they "do not claim a particular way of programming or designing the software . . . but instead merely claim the resulting systems."); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258-59 (Fed. Cir. 2016) (holding that claims were directed to an abstract idea where they claimed "the function of wirelessly communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function").

The Federal Circuit has cautioned courts against "[d]escribing the claims at . . . a high level of abstraction and untethered from the language of the claims [since it] all but ensures that the exceptions to § 101 swallow the rule."  *Enfish*, 822 F.3d at 1337.  "The 'directed to' inquiry . . . cannot simply ask whether the claims involve a patent-ineligible concept," but rather must consider whether the claim "as a whole" and "in light of the specification" is directed to

excluded subject matter. *Enfish*, 822 F.3d at 1335 (emphasis in original). The patent specification's statements differentiating it from prior art or "conventional" implementations "may ***bolster*** a conclusion that claims are directed to a non-abstract improvement of technology rather than an abstract idea." *Id*. at 1337, 1339 (emphasis supplied). Likewise, the step-one inquiry may "involve looking to the specification to understand 'the problem facing the inventor' and, ultimately, what the patent describes as the invention." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019). However, "[u]ltimately, the § 101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details . . . if those details are not claimed." *ChargePoint,* 920 F.3d at 769 (internal citations and quotations omitted). "Even a *specification* full of technical details about a physical invention may nonetheless conclude with *claims* that claim nothing more than the broad law or abstract idea underlying the claims." *Id*. (emphasis supplied); *see also Accenture*, 728 F.3d at 1345 ("[T]he level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method."); *Int'l Bus. Machines Corp. v. Groupon, Inc.*, 289 F. Supp. 3d 596, 602 (D. Del. 2017); *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338-39 (Fed. Cir. 2017), *cert. denied,* 139 S. Ct. 378 (2018) ("The main problem that Two-Way Media cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept.")

Thus, in *Accenture*, the Federal Circuit held that a complex specification, including detailed software implementation guidelines, did not preclude a finding that the claim at issue was abstract. *Accenture*, 728 F.3d at 1345. "[T]he important inquiry for a § 101 analysis is to look to the claim." *Id*. When the verbiage of computer-implementation was stripped away, "[t]he limitations of claim 1 [were] essentially a database of tasks, a means to allow a client to access those tasks, and a set of rules that are applied to that task on a given event." *Id*. Where "the claims themselves only contain generalized software components arranged to implement an abstract concept on a computer" without any additional features or limits, "the complexity of the

implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Id*.

Similarly, in its recent *ChargePoint* decision, the Federal Circuit determined that a claim describing an apparatus for communicating a request to charge an electric vehicle to a remote server over a network and relay that communication to a controller device to enable or disable the electric supply to charge the vehicle. *ChargePoint*, 920 F.3d 759 at 766. The court concluded that the claim involved an abstract idea—communicating requests to and from a remote server—and that the claim itself was directed to this abstract idea. *Id*. at 766-770. While it looked to the specification to understand the problem facing the inventor and how the inventor described the invention, the court ultimately held that the claim language was written so broadly as to preempt the use of any networked charging stations and therefore impermissibly abstract. *Id*. at 769-70. "The breadth of the claim language here illustrates why any reliance on the specification in the § 101 analysis must always yield to the claim language . . . . and the specification cannot be used to import details from the specification if those details are not claimed." *Id*. at 769.

Here, Claim 19 describes an "apparatus" to transmit messages via the internet, including a computer system, a database with tokens to control access to information for participator computers, and private messages containing "pointers" directing to pre-stored data (video, graphics, sound or multimedia). Claim 19 describes the interaction of these elements as: (1) a first computer sending a private message; (2) a controller computer communicating the private message to a second computer; and (3) a second computer receiving the private message and determining whether it can present the data, or else obtaining an agent to present the data, independent of the first computer. The only example of a "pointer" in the specification is an Internet Uniform Resource Locators, or URL—essentially a webpage "address" enabling an Internet browser to locate it on the Internet—pointing to pre-stored audio and video data, which can be fetched and communicated to a participator computer. ('245 Patent at 5:36-41.) The specification describes "tokens" in the controller computer database as being used to control permissions, priority, moderator privileges, visibility of one user to another, and regulation of

United States District Court
Northern District of California

12

United States District Court
Northern District of California

user data and messages.  (*Id.* at 8:6-58.)  The only reference to "pre-stored" data other than tokens in the specification is to "URLs [which] can point to pre-stored audio and video communications, which the Controller Computer 3 can fetch and communicate to the Participator Computers 5." (*Id.* at 5:38-41, referring to Fig. 1.)

Windy City contends that Claim 19 describes "an improved architecture for communicating online," "a particular way to implement a real-time communication system," and a "very specific means or method for improving chat capabilities as they existed in 1996." Having carefully examined the claim as a whole, the Court does not agree.  The Court finds that Claim 19 is, at its core, directed to communicating a message from a sender to a recipient via a computer network, and the recipient obtaining the means to display the message, as necessary. As in *Intellectual Ventures*, Claim 19 "does not recite any particular unique delivery of information . . . [n]or do the claims describe how the [computers] communicat[e] with [each] other . . . or any attributes of [claimed apparatus] aside from its broadly recited function." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329–30 (Fed. Cir. 2017).

Though Claim 19 arguably combines two abstract concepts—(1) relaying a message from sender to receiver; and (2) finding an agent to display the message if needed—the combination cannot change its abstract nature.  "Adding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), *cert. denied,* 138 S. Ct. 672 (2018) (finding claimed method of displaying image, assigning image code using mathematical formula, and reproducing image based on the image code was "directed to encoding and decoding image data," an abstract concept and addition of math did not change that).  A claim is no less abstract simply because it is lengthy or recites multiple steps.  *See Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d at 715 (Fed.Cir.2014) (finding lengthy claim nonetheless directed to abstract idea of "using advertising as an exchange or currency"); *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 562-63 (D. Del. 2014), *aff'd sub nom. Cloud Satchel, LLC v. Barnes & Noble, Inc.*, 626 F.App'x 1010 (Fed. Cir. 2015) (finding claim implementing cataloguing process to facilitate retrieval of documents from storage remotely "fundamentally recit[ed] an abstract idea").  Further, a

United States District Court
Northern District of California

1  combination of abstract processes—such as collecting and analyzing information and presenting

2  the results of that analysis— does not remove the claim from the realm of the abstract, without

3  more.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

4   Windy City relies on the background section of the patent to dispute the notion that

5  Claim 19 is abstract.  The background section describes various ways of "[m]ultiplexing group

6  communications among computers" available at the time, including electronic mail

7  transmissions with a local area network arbitrating which computers will receive them, to more

8  complex conferencing of multiple offices via a computer network; to internet "chat rooms" with

9  graphics and multimedia capability via an Internet Service Provider (ISP) like America On Line

10  (AOL).  ('245 Patent 1:29-63.)  The background section draws a contrast between an ISP like

11  AOL, which "has control over both the hardware platform and the computer program running on

12  the platform to create the 'chat room'" and "the Internet" which was "structured for one-way

13  communications" and had "no particular control over the platform."  (*Id.* at 1:50-56)  The patent

14  framed the problem as requiring users to choose between "the limited audience of a particular

15  Internet Service provider or the limited chat capability of the Internet."  (*Id*. at 1:60-63.)  The

16  patent states an object of the invention as providing "chat capability suitable for handling

17  graphical, textual, and multimedia information in a platform independent manner" and in "real

18  time." (*Id*. at 2:15-18; 2:28-34).  Nothing in the "Background of the Invention" or "Summary of

19  the Invention" sections alters the conclusion that Claim 19 is directed to communicating a

20  message containing a pointer to pre-stored data from a sender to a recipient via a computer

21  network, and the recipient presenting the pre-stored data in the message after first obtaining a

22  means for decoding the message, as necessary.  If anything, it only serves to underline the

23  abstract nature of the invention claimed.

24   Windy City next cites to the patent specification as bolstering the non-abstract nature of

25  the claim.  Windy City argues that the patent describes a novel solution to an Internet-centric

26  problem.  The portion of the specification cited by Windy City describes an illustration of

27  participator software in Figure 2, and states that the software uses "de/multiplexing via API" to

28  provide a "virtual connection."  ('245 Patent at 5:56-59; 6:1-3.)  The specification then describes

14

United States District Court
Northern District of California

1  an "alternate architecture" which allows "a separate connection between each object so that

2  multiplexing/ demultiplexing is not necessary and each object handles its own connection." (*Id.*

3  at 6:4-7.) As to this alternate architecture, the specification states "[t]his would influence system

4  performance, however." (*Id.*) This portion of the specification is ambiguous, at best, as to

5  whether it is describing an improvement over existing technology or simply an alternative

6  embodiment of the present invention. Moreover, as stated above, the specification cannot stand

7  in for details not stated in the claim itself. Claim 19 indisputably lacks such details. Windy

8  City's citation to the specification does not transform the abstract nature of what is claimed in

9  Claim 19.

10  The Court thus concludes Claim 19 is directed to an abstract idea.

11  **B.   *Alice* Step-Two Analysis**

12  The Court turns to the second step of the *Alice* analysis which requires that it determine

13  whether the elements of the claim individually or "'as an ordered combination" add enough to

14  "transform the nature of the claim" from an abstract concept into a patent-eligible application of

15  the concept. *Alice*, 573 U.S. at 217 (quoting *Mayo*). "[A]n inventive concept must be evident in

16  the claims." *RecogniCorp, LLC*, 855 F.3d at 1327. To evidence an inventive concept, the

17  claims must recite something beyond "well-understood, routine, conventional activities

18  previously known to the industry." *Alice,* 573 U.S. at 225.

19  "The question of whether a claim element or combination of elements is well-understood,

20  routine and conventional to a skilled artisan in the relevant field is a question of fact."

21  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). "Any fact . . . that is pertinent to

22  the invalidity conclusion must be proven by clear and convincing evidence." *Id.* (citing

23  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)). However, the ultimate question of

24  "whether a claim recites patent eligible subject matter is a question of law which may contain

25  underlying facts." *Id.* at 1368.

26  To the extent that the patent specification describes improvements over the state of the

27  art, the court "must analyze the asserted claims and determine whether they capture these

28  improvements." *Id.* at 1369 (citing *Alice*, 573 U.S. at 221). If a claim recites no more than "the

United States District Court
Northern District of California

application of an abstract idea using conventional and well understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018).

In this regard, Facebook argues as follows: Claim 19 asserts only a conventional order for analyzing data within a conventional communications system, which is insufficient to confer patent eligibility.  First, the specification requires only generic computers and the functions of the claimed "agent" accomplished by the conventionally available Netscape Navigator web browser.  ('245 Patent at 5:1-4; 7:34-43; 10:67-11:1.)[7]  Second, the claim states no inventive concept because it recites generic components programmed to perform generic steps ("communicat[ing]" a message, "receiv[ing]" the message, "determin[ing]" if the message can be presented, "obtaining" an ability to present information referenced in the message, and "presenting" information referenced in the message) without articulating any specific means or method for carrying out those steps.  Thus Claim 19 is no more than a "general concept . . . without offering any technological means of effecting that concept." *Affinity Labs*, 838 F.3d at 1262 (internal citation omitted).

Facebook also offers the expert report of Dr. James Storer who opines on the lack of an inventive concept in Claim 19 and its dependent claims.  (Morton Decl. Exh. 5, Expert Report of James A. Storer, Ph.D Regarding Invalidity of U.S. Patent Nos. 8,694,657 and 8,458,245, dated November 9, 2018, ["Storer Invalidity Report"] at ¶¶ 216-226.)[8]  Storer explains that the

---

[7]  The embodiments in the patent's specification relied on the use of the well-known, commercially available Netscape Navigator browser, "a program for displaying graphical multimedia documents specified by a URL." ('245 patent at 10:45-11:3; FIG 26.)  Marks testified that his original source code embodiment used Netscape Navigator because "that was the only thing that did Java applets at the time."  (Declaration of Warren J. McCarty, III in Support of Response to Motion, Exh. A [Marks Depo.] at 324:24-325:15.)  While Windy City protests that Marks never said that the patent was only capable of displaying multimedia using Netscape Navigator, the fact remains that the patent describes only use of conventionally well-known technologies to achieve a result.

[8]  Windy City moved to strike certain portions of Dr. Storer's December 14, 2018 Rebuttal Report regarding Non-Infringement but did not move to strike any portion of Dr. Storer's Invalidity Report.

United States District Court
Northern District of California

technological underpinnings of the claims were well-understood by April 1996, including internet chat systems, server/client computer architecture, databases, and login/password-based authentication.  (*Id*. at ¶¶ 218-20.)  Storer notes that the '245 Patent does not describe how URLs work, since that was well understood at the time, as was sending a URL in a message.  (*Id*. at ¶ 222.)  Storer further explains that determining and locating the application needed to view a particular kind of file was, at the time of the '245 Patent, a "well-known functionality built into web browsers" such as Netscape Navigator.  (*Id.* ¶¶ 224-25.)  In short, Storer opines that the limitations of Claim 19 and its dependent claims describe an intended result utilizing conventionally available, generic technology, but offer no specifics about how those results are achieved.  (*See id.* at ¶ 226, noting that claim 22 adds a requirement that "the pointer produces the communication on demand," a "standard operation of URLs" and that claims 23-25 only recite different types of pre-stored content without more).

Windy City provides no evidentiary opposition to Facebook's motion on the second step.  (*See* Windy City Response to Separate Statement of Facts, Dkt. No. 184-8, at p. 5-9.)  Windy City merely responds with attorney argument and the assertion that "the Court should consider *Alice*'s second step only with the benefit of a full trial record." (Oppo. to MSJ 12:19-20.)  Windy City states that it "*will* rebut Facebook's invalidity case by noting the technical distinctions over the prior art and the corresponding advantages to the claimed invention" at trial, citing to a recent district court decision as support for this novel procedural approach.  (*Id.* at 12:20-23, emphasis supplied, citing *Finjan, Inc. v. Juniper Network, Inc.*, No. 17-cv-05659 WHA, 2018 WL 4184338 at *9 (N.D. Cal. Aug. 31, 2018)).  *Juniper Network* provides no authority that would relieve Windy City from an obligation to offer any evidence in opposition the motion for summary judgment on *Alice* Step Two.  The citation to *Juniper Network* is taken out of context and ignores its procedural posture: a court-authorized early summary judgment on limited issues.[9]  Here, the Court never authorized staging the litigation in that way.

---

[9]  *See Finjan, Inc. v. Juniper Network, Inc.*, Case No. 17-cv-5659-WHA at Docket No. 35 ¶11 (ordering that "each side shall select one asserted claim — presumably the strongest case for infringement and the strongest case for noninfringement or invalidity, respectively — and file an early motion for summary judgment on that claim").

Only admissible evidence can create a triable issue of fact, not attorney argument. *Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence.") (citing *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009)). Prior to the filing of Facebook's summary judgment motion, expert reports had been produced and all discovery had closed. (Dkt. No. 117.) At summary judgment, Windy City was obligated to present its evidence of "technical distinctions over the prior art and the corresponding advantages to the claimed invention" in order to create an issue for trial. Yet, without explanation or any request for relief from its obligation to oppose summary judgment, Windy City offered no evidence to dispute Facebook's showing at Step Two. The Court is not obligated to take Windy City at its word that it can produce evidence at trial, nor is it "required to comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988).

The Court has nevertheless considered whether counsel's arguments warrant denial of the motion. Windy City argues that Facebook's motion must be denied because it has not shown that all the computer-based innovations of Claim 19 were well-understood, routine, and conventional, since it has not offered evidence that this combination of steps was "commonly used" at the time of the invention. In this regard, Windy City focuses on Marks' testimony and details in the specifications. First, Windy City's reliance on Marks' testimony does not persuade. Marks testified only that there were "very limited options for presenting a chat system at all" at the time of the invention, and that any system "universally usable . . . was probably going to be text because that's . . . basically, the only language that everything would understand, you know, if you're on Windows or Macintosh or whatever." (McCarty Decl. Exh. A [Marks Depo.] at 238:14-24.) By setting up the concept of "common use" as a straw man, Windy City has confused novelty with inventiveness. "[M]erely reciting an abstract idea by itself in a claim—even if the idea is novel and non-obvious— is not enough to save it from ineligibility." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168–69 (Fed. Cir. 2019); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a *new* abstract idea is still an abstract idea." (emphasis in original)).

United States District Court
Northern District of California

18

United States District Court
Northern District of California

Next, relying on the '245 Patent's specification, Windy City asserts that the patent explains: how to use pointers for multimedia data; how to create a controller computer capable of arbitrating user interactions via tokens in a database; and how the recipient computer is programmed with rules to determine how to present multimedia.  ('245 Patent at 5:36-41; 8:6-58; 10:63-65, Fig. 6.)  Based thereon, Windy City maintains that the patent "enables users to send and receive multimedia using one message type—'out-of-band' messages—distinct from the underlying private message type, while still maintaining a single 'virtual connection'." (Oppo. at 8:11-13, *citing* '245 Patent at Fig. 2).  Thus, Windy City argues Facebook cannot show that the combination of elements was routine and conventional as of 1996.

These arguments fail to persuade for several reasons.  First, though Windy City cites to portions of the specification in search of an inventive concept, Claim 19 itself does not describe sending and receiving of "out-of-band" messages as distinct from other private messages, nor does it explain a "virtual connection" or how to maintain it.  (*See* '245 Patent, Claim 19.)  Likewise, Claim 19 does not teach how the recipient computer determines the means for presenting multimedia.[10]  If "the evidence that aspects of the invention [were] not well-understood, routine, and conventional does not pertain to the invention *as claimed*, it will not create a factual dispute as to these claims." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018) (emphasis supplied) (affirming grant of summary judgment of patent ineligibility where improvements stated in specification were not recited in claims at issue); *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1326 (Fed. Cir. 2016) (expert testimony regarding problems solved by the invention did not raise disputed issue of fact because claims did not contain the limitations opined to solve the problem); *Intellectual Ventures*, 838 F.3d at 1321–22 (technological details or features stated in

---

[10]  Windy City argues that the specification "teaches how the recipient computer is programmed with rules to decide how the multimedia is to be presented" citing the '245 Patent at Figure 6 and 10:63-65.  However, the specification describes the computer as using "built in rules to decide how the graphical multimedia data is to be presented or locates another program suitable to present the data.  In this case, the software **6** is utilizing Netscape Navigator, a program for displaying graphical multimedia documents specific by a URL."  ('245 Patent at 10:63-11:1.)

other parts of patent cannot create material issue of fact when they are not present in the claims at issue).

Second, even assuming those functionalities had been recited in Claim 19, or that it could be construed to encompass them,[11] Windy City offers no basis for finding that those functionalities or their combination describe an inventive concept. Windy City did not dispute Facebook's evidence that "[t]he hardware described in the written description and asserted claims of the '245 patent was routine, conventional, and well-understood at the time the '245 patent was filed." (*See* Windy City's Response to Separate Statement of Facts, Dkt. No. 184-6, Fact 30, citing Storer Invalidity Report at ¶¶ 217-26.) Windy City does not point to anything in the specification that explains how these elements, individually or "'as an ordered combination,'" create an improvement in functionality or efficiency of the communication system. *Cf. Aatrix Software* 890 F.3d at 1357 ("While assertions in the patent [specification] will not always be enough to create a genuine dispute of material fact, they did so . . . . [where defendant] could point to no evidence in the record contradicting the statements from the specification"). Though the patent's "Summary of Invention" states an object of the invention to "advance and improve the technology of group computer multiplexing to enable better computerized group communications" ('245 Patent 1:67-2:2), nowhere does the patent state how it does so.

Though Windy City criticizes Storer's opinions as "conclusory statements" focused on the conventionality of each claim element in isolation,[12] Windy City offers no expert opinions or other evidence to explain how the combination of elements in Claim 19 describes anything other than a "well-understood, routine, and conventional" system of sending and receiving messages using a computer network connected to the internet. *Cf. Vaporstream, Inc. v. Snap Inc.*, No.

---

[11] In its opposition to summary judgment, Windy City does not suggest that claim construction is necessary to decide the patent eligibility issue, and the Court finds no need to construe any terms in order to determine patent eligibility under Section 101. Only the term "real time" in Claim 19 appears to be a term in dispute, and Windy City has proposed that the term should be given its ordinary meaning. (*See* Windy City's Reply Claim Construction Brief at 7.)

[12] Storer supports his opinions with a detailed explanation of the state of the art in his report. (*See* Storer Report at ¶¶ 163-82.) Windy City's objections to Storer's invalidity opinions as being conclusory are overruled.

217CV00220MLHKSX, 2018 WL 1116530, at *6 (C.D. Cal. Feb. 27, 2018) (summary judgment denied where plaintiff "dispute[d] [defendant's] assertion as to what was well-understood, routine, and conventional at the time of the invention, and . . . offer[ed] competing testimony *from its own technical expert on this issue*") (emphasis supplied); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (where "recited physical components behave exactly as expected according to their ordinary use" and patent "fails to provide the requisite details necessary to carry out" abstract idea but merely stated to "apply it on a telephone network," patent was ineligible).

The '245 Patent's specification acknowledges that then-existing "[c]hat room communications can be mere text . . . or can involve graphics and certain multimedia capability, as exemplified by such Internet service providers as America On Line" and that "the World Wide Web . . . does have certain graphical multimedia capability." ('245 Patent at 1:40-44; 1:57-60.)  None of the limitations of Claim 19 recite how the claimed apparatus improves on this existing technology.  For instance, Claim 19 does not state *how* the second participator computer determines whether it can present the pre-stored data, *how* it obtains the agent, or *how* it performs those steps.  And, indeed, the specification indicates that all these steps were to be performed with the then-existing Netscape Navigator internet browser program.  (*Id.* at 9:5-14, 10:67-11:1.)[13]  Facebook offers evidence that performing the steps of determining whether the computer had the necessary software to display a particular file located via URL, and then locating the software needed for display if it was not present, were functions of a standard web browser like Netscape Navigator.  (Storer Invalidity Report ¶ 225.)  Thus, this element of Claim 19 recites nothing more than using a standard internet browser of the time.

While Windy City offers argument that the patent "introduced . . . multiplexing features and improvements that unlocked the ability to implement organized and multimedia-capable group communications over the Internet . . . in real-time," this argument does little more than

---

[13]  As Facebook's expert explains, Netscape Navigator, as it was publicly available at the time of the '245 Patent, included a Netscape Chat program which enabled users to send and view URLs including the ability to access audio, video, and multimedia files.  (Storer Invalidity Report at ¶¶ 167, 173-74.)

United States District Court
Northern District of California

embellish an abstract idea with a technical gloss.  Leaving aside the fact that the no "multiplexing features" or "improvements" are stated in Claim 19, the argument does no more than describe the result of applying a series of technological elements that were well-known at the time to the abstract idea of sending a communication from one user to another without "improving an existing technological process."  *Alice*, 573 U.S. at 223; *see Mortgage Grader, Inc. v. First Choice Loan Servs Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) ("…generic computer components such as an 'interface,' 'network,' and 'database'" did not satisfy the inventive concept requirement).  As in *Electric Power Group*, "the claims at issue do not require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic *arrangement* of known, conventional pieces."  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (emphasis supplied).  The Federal Circuit has "repeatedly held that such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept."  *Id.* at 1355-56 (citing *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014)).

Based upon the record put forth by Facebook, and in the absence of evidence in opposition by Windy City, the recited elements of the claim, individually and in ordered combination, do not transform an abstract idea into an inventive concept.  The asserted claims of the '245 Patent provide little more than an instruction to use conventional elements to achieve a result, devoid of any explanation as to how they achieve the result outside of usual, conventional use.  As such, they do not describe an inventive concept under *Alice* Step Two.  *See Ultramercial*, 772 F.3d at 715 (patent invalid where it "simply instruct[s] the practitioner to implement the abstract idea with routine, conventional activity"); *Solutran*, 931 F.3d at 1168–69 (same); *Apple v. Ameranth*, 842 F.3d at 1240-41 (patents directed to an abstract idea because they "do not claim a particular way of programming or designing the software . . . but instead merely claim the resulting systems."); *Two-Way Media*, 874 F.3d at 1337 (finding limitations requiring "sending" and "directing" of information "d[id] not sufficiently describe how to achieve these results in a non-abstract way"); *Affinity Labs*, 838 F.3d at 1258-59 (holding that claims were directed to an abstract idea where they claimed "the function of wirelessly

22

communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function"); *see also Interval Licensing LLC*, 896 F.3d at 1338, 1340-47 ("the claims do not recite *how* the attention manager *performs the function* of determining where to display images in the 'windowed' environment so that they do not interfere with a user's primary activity") (emphasis supplied).

Accordingly, based on the foregoing, the motion for summary judgment on grounds of invalidity under Section 101 as to Claim 19 and its dependent claims is **GRANTED**.[14]

## IV.   CONCLUSION

Facebook's motion for summary judgment on grounds of invalidity is **GRANTED**.  The Court will enter judgment in favor of Facebook, Inc. and against Windy City Innovations, LLC as to the remaining claims in the '245 patent.  Facebook shall provide a form of judgment within five (5) business days, approved as to form by plaintiff.

The pending Daubert motions filed by both parties are **DENIED AS MOOT**.

This terminates Docket Nos. 153, 155, and 160.

**IT IS SO ORDERED**.

Date: September 24, 2019

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[14]  Based upon the Court's grant of summary judgment on grounds of invalidity, the Court does not reach the remaining non-infringement arguments in Facebook's motion for summary judgment.

United States District Court
Northern District of California